IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **MADERO L. POUNCIL,** | 2:09-cv-1169-JAM-CMK |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **JAMES TILTON, et al.,** | |
| Defendants. | |

Plaintiff Madero L. Pouncil is a California inmate serving a sentence of life without parole (LWOP). He is also a Muslim.

Plaintiff filed this civil action to challenge the California Department of Corrections and Rehabilitation's policy that bars LWOP inmates from participating in the Department's overnight family visiting program. In his original and amended complaints, Plaintiff contends that routine conjugal visits with his spouse are essential to carrying out the tenets of his Muslim faith, and he says that by restricting conjugal visitation with his spouse, the policy at issue places a substantial burden on his practice of religion, and thus, violates the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

///

1

Defendant Beard has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. For the reasons discussed below, the motion will be granted.

Two things have happened since Plaintiff filed this lawsuit that make his RLUIPA claim moot. First, Plaintiff divorced his wife. Second, Plaintiff's (former) spouse had her visitation privileges revoked permanently at all state correctional institutions after she was caught trying to smuggle contraband to another inmate. In light of these two developments, this case no longer presents a live controversy, and it must be dismissed.

## I.   Background.

Plaintiff has been an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) since December 1989. He was housed at Mule Creek State Prison at all times relevant to this case.

Plaintiff married Terrie Lynn Pouncil (née Jefferson) in July 2007. Plaintiff applied for an overnight visit with his new wife as part of CDCR's Family Visiting program a little over a year later. This program, which is codified at title 15 of the California Code of Regulations, Sections 3000 and 3177, allows certain low-risk inmates time to visit with their immediate family members "under relatively private and intimate circumstances for an extended period of time—usually overnight and sometimes for as long as three days." *Pro-Family Advocates v. Gomez*, 46 Cal. App. 4th 1674, 1679 n.3 (Cal. Ct. App. 1996). Other categories of high-risk inmates—including those condemned to death; those serving life sentences without the possibility of parole (LWOP); and those serving life sentences without a parole date set by the Board of Prison Terms—are ineligible for the program. Cal. Code Regs., tit. 15, § 3177(b)(2). Because Plaintiff is serving a sentence of life without the possibility of parole, his application for an overnight visit with his wife was denied.

Plaintiff filed an administrative grievance three days later, appealing the denial of his request for overnight visits with his spouse. In his appeal, Plaintiff explained that private, conjugal visits with his wife were necessary to meet his religious obligations as a husband, and that CDCR's policy of denying such visits to LWOP inmates violated his rights under the U.S. Constitution and

the Religious Land Use and Institutionalized Persons Act (RLUIPA).  This appeal was denied at all three levels of administrative review.

After Plaintiff exhausted his administrative remedies, he filed this lawsuit in April 2009.  In his complaint, Plaintiff further explained why consummating his recent marriage to Ms. Pouncil, and then maintaining periodic sexual relations with her thereafter, was an essential part of his religious duties as a Muslim husband.  The complaint is clear with respect to the specific relief sought:  Plaintiff is not seeking damages for any past harm.  Rather, he is asking for prospective relief only; namely, that the Court enjoin enforcement of CDCR's policy that bars conjugal visits for LWOP inmates, like himself.

After Plaintiff filed his original complaint in 2009, the parties spent the next several years litigating whether the claims in this case were barred by the statute of limitations.  This question ultimately went to the U.S. Court of Appeals for the Ninth Circuit in an interlocutory appeal, where the court determined that Plaintiff's claims were timely and that this case should proceed on the merits.  *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012).  After the Ninth Circuit's mandate issued in February 2013, litigation resumed in this Court.  Meanwhile, Plaintiff initiated divorce proceedings against Terri Lynn Pouncil in the Amador County Superior Court two months later.

The Court appointed counsel for Plaintiff after this case was remanded from the Ninth Circuit.  In the months that followed, the parties filed a litany of status reports, and there was a question whether this case was proceeding on multiple claims or an RLUIPA claim alone, but there was no significant movement otherwise.

That changed in January 2014, when Plaintiff filed his First Amended Complaint.  In the amended complaint, Plaintiff offers a richer explanation of his duties as a Muslim husband than was offered in the original complaint.  For instance, the amended complaint explains that Plaintiff's claim:

> "[G]oes far beyond whether he is entitled to engage in sexual relations with his wife – the issue is whether he is permitted to spend time with her in private, nurturing their intimacy, encouraging her spirituality as the leader of the family, developing an emotional bond that requires both time and privacy, and that is fundamental to an institution regarded as sacred within many religions, including Mr. Pouncil's own faith – Islam."

Like the original complaint, the amended complaint is seeking prospective injunctive relief only. Plaintiff is seeking to enjoin enforcement of § 3177(b)(2) on the grounds that it substantially burdens his practice of religion in violation of RLUIPA.[1] This case is proceeding on Plaintiff's RLUIPA claim as alleged in the First Amended Complaint.

In the interim, Plaintiff's divorce proceedings against Terri Lynn Pouncil were proceeding in the Amador County Superior Court. The records from the state court show that the trial judge entered final judgment on December 31, 2013, and set the effective dissolution date for April 2014. Plaintiff was returned to single status on April 22, 2014.

In July 2014, Ms. Pouncil had her visitation privileges revoked permanently at all CDCR institutions after she was caught trying to smuggle contraband into Mule Creek State Prison.

**II.    Legal Standard for a Rule 12(b)(1) motion to dismiss.**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks subject-matter jurisdiction over an entire action, or over specific claims in the complaint. Because standing and mootness are both issues pertaining to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under 12(b)(1), not Rule 12(b)(6). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A jurisdictional challenge is considered factual if it relies on extrinsic evidence, and does not rely solely on the pleadings. *Id.* For such a challenge, the court need not presume the truthfulness of the complaint's allegations, and if the existence of jurisdiction turns on disputed issues of fact, the court may "hear evidence regarding jurisdiction" and "resolve factual disputes where necessary." *Id.*; *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

When a Rule 12(b)(1) motion attacks the existence of subject-matter jurisdiction in fact, the plaintiff has the burden of proving that such jurisdiction exists. *Thornhill Publ'g Co. v. Gen.*

---

[1] The First Amended Complaint also raised a claim under 42 U.S.C. § 1983, alleging that § 3177(b)(2) deprives Plaintiff of rights secured by the First Amendment to the U.S. Constitution. The Court has since dismissed this claim.

4

*Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  Once the party bringing the Rule 12(b)(1) motion presents evidence or other affidavits challenging jurisdiction, the burden shifts to the party opposing the motion to present evidence needed to establish subject-matter jurisdiction.  *Safe Air for Everyone*, 373 F.3d at 1039.

**III.  Jurisdiction.**

    **A.  Standards.**

To maintain a lawsuit in federal court, a plaintiff must have standing.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Standing is a judicially created doctrine that is an essential part of Article III's case-or-controversy requirement.  *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796 (9th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."  *Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 70 (1983); *see also Lujan*, 504 U.S. at 560-61; *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011) ("The irreducible constitutional minimum of standing includes three elements: (1) injury in fact; (2) causation; and (3) redressibility.").  Standing is determined by the facts in existence at the time the complaint is filed.  *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

A case becomes "moot" when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  "Mootness has been described as the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 n.22 (1997).  A plaintiff in federal court must show that a live controversy exists at all stages of review, not merely on the day the complaint is filed.  *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797 (9th Cir. 1999) (en banc).

Whether a live controversy exists depends on whether the court can grant effective relief if it decides the matter on the merits.  *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 590 F.3d 725, 727 (9th Cir. 2009).  If a plaintiff can no longer obtain any effective relief from the judicial process,

the court loses jurisdiction to resolve the underlying dispute, and any opinion about the legality of the challenged action is advisory. *See Madison*, 177 F.3d at 797; *City of Erie*, 529 U.S. at 287.

**B.    Discussion.**

Plaintiff brought this lawsuit because he wanted conjugal visits with his spouse. Plaintiff was married when he filed suit in 2009, and setting aside any question about the merits of his RLUIPA claim, there is no doubt he had standing to challenge CDCR's policy that restricts overnight visits for LWOP inmates at the time he filed suit.

Things have changed during this litigation, however. Plaintiff is no longer married to Ms. Pouncil. As an unmarried man, Plaintiff is not eligible for conjugal visits under CDCR's Family Visiting program, despite the length of the sentence he is serving. Plaintiff would not be eligible for conjugal visitation even if the Court granted Plaintiff all the relief he seeks in this lawsuit (i.e., an order enjoining enforcement of § 3177(b)(2).)

Now that Plaintiff is divorced, this case offers no opportunity for any meaningful relief. This case is moot, and any opinion about the legality of the challenged policy would be advisory. *See United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known, the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.")

Plaintiff argues that even if his divorce has rendered this case moot, it still meets one of the exceptions to the mootness doctrine. Specifically, Plaintiff contends that this case presents a claim "capable of repetition, yet evading review," because like a woman's pregnancy, the policy at issue makes it such that he will never be able to sustain a marriage of sufficient length to litigate his RLUIPA claim to completion. The Court is not persuaded. Pregnancy is of a fixed duration, and a short one at that. Not so with marriage. Whether Plaintiff can manage to stay married long enough to litigate this case again—or whether Plaintiff remarries at all—are too speculative to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine. The Ninth Circuit has found this to be the case on similar facts.

In *Tran v. Napolitano*, three U.S. citizens brought suit against the State Department and the Department of Homeland Security, seeking various forms of relief relating to K-1 visas. 497 Fed. App'x 724, 725 (9th Cir. 2012). The three plaintiffs, who were engaged to Vietnamese women,

were challenging the consular officials' refusal to issue visas to their fiancées. *Id.* While the case was pending on appeal, two of the three plaintiff's got married, while the third broke up with his fiancée. *Id.*

In light of the changed circumstances, the Ninth Circuit found that the plaintiffs' claims for injunctive relief were moot. *Id.* The court rejected the plaintiffs' argument that the case presented a claim capable of repetition, yet evading review, finding that "[w]hile it is possible that one of the Plaintiffs will again file a petition on behalf of a non-citizen fiancée, that possibility is too speculative to warrant application of the 'capable of repetition, yet evading review' exception to the mootness doctrine." *Id.* at 726 (citing *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)).

So too here. Plaintiff is now divorced, and as an unmarried man, he cannot have conjugal visits whether he is serving an LWOP sentence or otherwise. If Plaintiff remarries, he will be free to renew his challenge to the policy at issue. But the mere possibility that Plaintiff will remarry is simply too remote at this point to warrant an exception to the mootness doctrine.

**IV. Conclusion.**

Plaintiff's RLUIPA claim regarding his right to consummate a marriage and have routine sexual relations with a spouse is moot. Because this case presents a non-justiciable controversy, Defendant's motion to dismiss for lack of subject-matter jurisdiction is granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss is GRANTED.
2. The Clerk is directed to close the case.

Dated: 5/4/2015                             /s/ John A. Mendez_____
                                            John A. Mendez
                                            United States District Judge